Strafford
No. 2010-707

DANA CHATMAN

v.

JAMES BRADY & a.

Argued: June 9, 2011
Opinion Issued: September 15, 2011

*Bussiere & Bussiere, P.A.*, of Manchester (*John P. Fagan* on the brief and orally), for the plaintiff.

*Sullivan & Gregg, P.A.*, of Nashua (*Richard A. Mitchell* on the joint brief), for defendant James Brady, and *Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Jason D. Gregoire* on the joint brief and orally), for defendant Lee Country Fair.

LYNN, J. The plaintiff, Dana Chatman, appeals a decision of the Superior Court (*Wageling*, J.) dismissing his lawsuit against the defendants, James Brady and Lee Country Fair, pursuant to RSA 651:70 (2007), an immunity statute. We reverse and remand.

For purposes of resolving this appeal, the allegations in the plaintiff's writ are taken as true and all reasonable inferences drawn therefrom are construed in the light most favorable to the plaintiff. *See Khater v. Sullivan*, 160 N.H. 372, 373 (2010). We recite other facts in the record as are relevant. In May 2007, the plaintiff pleaded guilty to operating a vehicle while certified as a habitual offender, a felony offense. *See* RSA 262:23 (Supp. 2010). The trial court sentenced him to one year in the Strafford County House of Corrections, with all but fourteen days to be served on administrative home confinement (AHC). *See id.* After fourteen days of incarceration, which commenced on June 2, 2007, the plaintiff was released to AHC. As a condition of his release, he was required to wear a monitoring bracelet. Because he could not afford the daily fee associated with the bracelet, he was required to work to cover its costs. On June 24, 2007, he began participating in a work program under the control of Strafford County Community Corrections, and continued to do so intermittently.

On or about September 9, 2007, the plaintiff's work assignment was to help clean up the grounds at the site of defendant Lee Country Fair, assisting in loading tables and chairs onto a trailer owned by defendant Brady. While Brady was present, the plaintiff loaded the items onto the trailer before it was hitched to a truck that also was owned by Brady. The trailer was sitting on soft, uneven ground. While the loaded trailer was being hitched to the truck, a weld on the trailer hitch failed, causing the trailer to fall on the plaintiff's leg, injuring him.

The plaintiff filed a lawsuit against the defendants alleging that Brady was negligent and that Lee Country Fair was vicariously liable for that negligence. He alleged that Brady knew or should have known that loading the trailer prior to hitching it to the truck would cause excessive stress to the trailer hitch and welds, and that maneuvering the fully loaded trailer to the truck while on soft, uneven ground was unreasonably dangerous.

The defendants moved to dismiss the writ, arguing that they were immune from liability under RSA 651:70, which protects from negligence claims persons or organizations who use the services of offenders performing public service as part of their sentence. They also filed supporting exhibits including "an information sheet provided to . . . participants by the Strafford County Community Work Program," and "an AHC and Step Down Contract for the Community Corrections Program initialed and executed by the plaintiff." The information sheet contains a section on "Work Crew Guidelines," which includes a segment on "Medical Coverage" that cites and quotes RSA 651:70. In the AHC and Step Down Contract, the plaintiff initialed the following statement: "While a participant in the Program, all medical expenses incurred will be my responsibility." The defendants alleged that the information sheet put the plaintiff "on notice when he participated in the program that he could not sue the Fair or any of its participants for anything other than gross negligence," and that the contract "indicates that 'all medical expenses incurred' would be [the plaintiff's] responsibility."

The plaintiff objected to the motion to dismiss and to the exhibits. He contended that because there was no verification that he actually received the information sheet that referenced RSA 651:70, the document should not have been considered in the motion to dismiss context. He also argued that the document was not relevant to the applicability of the immunity statute. With respect to the AHC and Step Down Contract, the plaintiff contended that the document did not refer to RSA 651:70, that the statute was not applicable to AHC participants, and that the document did not qualify as a valid exculpatory contract.

The trial court dismissed the lawsuit, ruling that RSA 651:70 afforded the defendants immunity from negligence liability regarding the work performed by the plaintiff at the time of his injury. In its ruling, the court stated that the facts were taken from the plaintiff's "Special Plea and Brief Statement" and his objection to the motion to dismiss, and did not refer to the defendants' exhibits. The court determined:

> [The plaintiff] was performing "uncompensated public service" within the meaning of the statute when he was injured. He was performing service in order to be able to wear a monitoring bracelet, a condition of his release to A.H.C., which was in turn part of his sentence. He was working at the direction of Strafford County Community Corrections, and was not being compensated in any way by either of the defendants. He was also not being compensated monetarily by Strafford County Community Corrections; instead he was receiving the benefit of being permitted to serve the remainder of his sentence on A.H.C. Moreover, includ-

ing this case within the ambit of [RSA] 651:70 serves the spirit and intent of the statute: to protect people and organizations from liability when they permit individuals to work for them at the request and direction of correctional officials.

The court also rejected the plaintiff's constitutional challenges to the immunity statute. In a subsequent order, the court clarified that its dismissal applied to both defendants. This appeal followed.

In reviewing a trial court's ruling on a motion to dismiss, we generally consider whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. *See Khater*, 160 N.H. at 373. The defendants, however, moved to dismiss based exclusively upon the application of an immunity statute, RSA 651:70. In granting the motion, the trial court ruled that the statute applied as a matter of law. Therefore, our review of the trial court's ruling is *de novo*. *See State v. Jennings*, 159 N.H. 1, 3 (2009).

The immunity statute at issue, RSA 651:70, falls within the statutory chapter that governs sentencing, RSA chapter 651. RSA 651:70 provides:

> No person or organization who utilizes the services of any person *performing uncompensated public service under this subdivision* shall be liable for any damages sustained by an individual while performing such services for the benefit of the person or organization or any damages caused by that person unless the person or organization is guilty of gross negligence.

(Emphasis added.) The meaning of this statute is the crux of this appeal. To determine its meaning, we first examine its language and ascribe the plain and ordinary meaning to the words used. *State v. Lamy*, 158 N.H. 511, 515 (2009); *see* RSA 21:2 (2000). We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language that the legislature did not see fit to include. *Lamy*, 158 N.H. at 515. We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*; *see* RSA 21:1 (2000). Our goal is to apply statutes in light of the legislature's intent in enacting them and the policy sought to be advanced by the entire statutory scheme. *Jennings*, 159 N.H. at 3. Furthermore, because RSA 651:70 is a provision within the Criminal Code, we construe it according to the fair import of its terms and to promote justice. RSA 625:3 (2007). We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *Jennings*, 159 N.H. at 3.

The plaintiff argues that RSA 651:70 is not applicable because he was performing work pursuant to an AHC sentence, and neither the sentencing

court nor the superintendent of the Strafford County jail had the authority to order "uncompensated public service" for his felony habitual offender conviction. He also argues that, as a factual matter, he could not have been performing "uncompensated public service" since he was working to cover the cost of his AHC bracelet, and thus was compensated for his labor. Finally, the plaintiff challenges the constitutionality of the statute.

The defendants agree that the plaintiff was not sentenced to "uncompensated public service." Rather, they contend that he entered into a contract with the Strafford County Community Corrections Program to voluntarily perform uncompensated public service in order to cover the cost of the AHC monitoring bracelet, as evidenced by the Strafford County work program guidelines and the AHC and Step Down contract. They argue that "[i]n return for the opportunity to take advantage of AHC, he forfeit[ed] some rights under that contract." Additionally, the defendants argue that his work constituted "uncompensated public service" because they provided no monetary compensation to Strafford County, and the plaintiff received none for his work. They also dispute the plaintiff's constitutional challenges.

The term "uncompensated public service" is not defined by statute. However, its scope is limited under RSA 651:70 to "uncompensated public service *under this subdivision.*" (Emphasis added.) A review of several statutory provisions that use the term demonstrates that it describes a type of release from incarceration ordered by an authorized government entity. *See, e.g.,* RSA 651:19 (2007) (amended 2007); RSA 651:36-a (2007); RSA 651:68 (2007) (amended 2007). RSA 651:19, as it existed when the plaintiff was sentenced, provided in part:

> *A sentencing court may order* any person who has been committed to a correctional institution other than state prison under a criminal sentence may be released therefrom for the purpose of obtaining and working at gainful employment, *for the performance of uncompensated public service as provided in RSA 651:68-70,* or to serve the sentence under home confinement, provided the correctional facility has a home confinement program.

(Emphases added.) This statute distinguishes a release ordered for performing "uncompensated public service" from other types of release ordered by a sentencing court, such as "working at gainful employment" or "home confinement." *See* RSA 651:19 (Supp. 2010) (under amended statute, sentencing court also may order release for a "day reporting program"). Here, the defendants agree, and the record supports, that the plaintiff participated in the work program pursuant to an AHC sentence and not a

sentence to perform "uncompensated public service." *See* RSA 262:23 (sentencing court may order habitual offender "convicted of driving a motor vehicle on the ways of this state while an order . . . prohibiting such operation is in effect" to "serve his or her sentence *under home confinement pursuant to RSA 651:19*" (emphasis added)).

In addition to the sentencing court, other government entities are authorized to order "uncompensated public service." RSA 651:68, as it existed when the plaintiff began participating in the work program, provided:

> The performance of *uncompensated public service* of a sort that in the opinion of the court, the commissioner of the department of corrections, or the parole board will foster respect for those interests violated by the defendant's conduct *may be ordered*:
>
> I. *By the sentencing court* as a condition of probation, conditional discharge, release under RSA 651:19, or suspension of sentence;
>
> II. *By the commissioner of the department of corrections* as a condition of release under RSA 651:25;
>
> III. *By the parole board* as a condition of parole.

(Emphases added.) As this statute makes clear, at the time the plaintiff began participating in the work program, county correctional authorities such as Strafford County Community Corrections had no authority to order the plaintiff to perform "uncompensated public service."[*]

We are aware that the legislature later amended the sentencing provisions to grant authority to the superintendent of a county correction facility to establish, for certain offenders, a day reporting program in lieu of incarceration, RSA 651:19-a (Supp. 2010), and to order the performance of uncompensated public service, RSA 651:68 (Supp. 2010). *See* Laws 2007, 149:2, :4. RSA 651:19-a, I, provides in part:

---

[*] RSA 651:36-a, which was in effect at the time the plaintiff began participating in the work program, provides in part: "The county commissioners of any county may authorize the *superintendent of the county correctional facility* to make arrangements with officials of a city or town to have prisoners from the county correctional facilities perform *uncompensated public service at municipality-owned grounds or property*." (Emphases added.) The defendants do not contend that this statute has any relevance in this case, and there is no indication in the record that the work site at issue here constituted municipality-owned grounds or property. Therefore, we do not consider the implications of RSA 651:36-a in this case.

> The superintendent of a county correctional facility may establish a day reporting program in lieu of incarceration for certain offenders as deemed appropriate by the superintendent. Such release shall be for such terms or intervals of time and under such terms and conditions as may be permitted by the facility's rules and regulations or as the court may order.

The current version of RSA 651:68 authorizes "the superintendent of a county correctional facility" to order "[t]he performance of uncompensated public service of a sort that in the opinion of . . . the superintendent . . . will foster respect for those interests violated by the defendant's conduct." RSA 651:68 (Supp. 2010).

These amendments, however, became effective on August 17, 2007, after the plaintiff began participating in the work program but before he was injured. The defendants make no argument that these amendments apply to the plaintiff's lawsuit. Rather, they argue that the plaintiff volunteered to perform uncompensated public service, thereby forfeiting his right to sue as set forth in RSA 651:70. They construe the immunity statute as applying when persons voluntarily enter a county work program in order to cover the costs associated with the monitoring bracelet for AHC, even absent an order by the sentencing court or other authorized government entity for the performance of "uncompensated public service." The defendants emphasize the policies advanced by the immunity statute, contending that "[i]n order to entice organizations to take on criminals they do not know and will not control or supervise, the law provides protection for the organization in the form of immunity from negligence lawsuits," and that the statutory scheme "allows offenders to serve their sentences under [AHC] and, while doing so, participate in community service which benefits personal growth and charitable ends."

■ As important as the policies identified by the defendants may be, we conclude that the plain language of the immunity statute, read within the sentencing scheme, demonstrates that RSA 651:70 is limited to "uncompensated public service" ordered by a government entity authorized under RSA 651:68. Strafford County Community Corrections had no authority to order such "uncompensated public service" at the time the plaintiff entered the work program, and the defendants do not argue that he was performing such service in the context of authority granted to the superintendent of a county correctional facility under the 2007 statutory amendments. Accordingly, we conclude that RSA 651:70 does not afford the defendants immunity under the facts alleged in this case, and, therefore, the trial court erred in dismissing the plaintiff's lawsuit.

With respect to the Strafford County work program guidelines and the AHC and Step Down Contract, the trial court's order did not address these documents. To the extent the defendants argue that the documents incorporate RSA 651:70 as a contract term, create a binding exculpatory contract or otherwise provide some basis for immunity independent of RSA 651:70, we do not address such arguments in this appeal and leave them for the trial court to consider on remand.

Given our holding, we need not consider the plaintiff's argument that, as a factual matter, he could not have been performing "uncompensated public service" since he was working to cover the cost of his AHC bracelet. Additionally, because we decide this case on statutory grounds, we need not consider the plaintiff's constitutional arguments.

*Reversed and remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.